No. 2--97--0092

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

PAULA T. SOLIMINI, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff, )

) Nos. 94--L--1382

v. ) 94--L--1725 cons.

)

JOAN F. THOMAS, MARIA J. )

KALAMARAS, R.C. TOPSOIL, and  )

ANTHONY M. CARNEY, )

)

Defendants )

)

(Joan F. Thomas, Plaintiff-  )

Appellee; R.C. Topsoil, Anthony )

M. Carney, Defendants-       ) Honorable

Appellants; Maria J. Kalamaras, ) Charles F. Scott,

Defendant). ) ) Judge, Presiding.

_________________________________________________________________

JUSTICE DOYLE delivered the opinion of the court:

This appeal is from a trial court order which denied a contribution claim brought pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 
et seq
.
 (West 1996)).  The primary question raised in the appeal is whether a plaintiff and a tortfeasor in a personal injury case made a good- faith settlement which discharged the settling tortfeasor from liability for contribution to a nonsettling tortfeasor.

On September 29, 1994, Paula Solimini sought recovery for injuries she suffered in an automobile accident by filing a negligence action (Solimini's case) against defendants Joan F. Thomas (Thomas), Maria J. Kalamaras (Kalamaras), Anthony M. Carney (Carney), and, on a theory of 
respondeat superior
, Carney's employer, R.C. Topsoil (Topsoil).  Thomas also suffered injuries in the same accident and brought a separate negligence action (Thomas' case) against Kalamaras, Carney, and Topsoil.  The circuit court consolidated the two cases and tried them together.  Prior to the trial, all the defendants in the Solimini case filed counterclaims for contribution against each other.  On July 1, 1996, the jury returned verdicts in the consolidated cases.

With respect to Solimini's case, the jury's verdict was in favor of Solimini and awarded her total damages of $2,450,000.75.  The jury acquitted Kalamaras and apportioned 30% of the liability to Thomas and 70% of the liability to Carney and Topsoil (hereinafter sometimes collectively referred to as Topsoil).

With respect to Thomas' case, the jury's verdict was in favor of Thomas and found that the total damages were $180,000.  The jury acquitted Kalamaras and apportioned 30% of the liability to Thomas and 70% of the liability to Topsoil.  After reducing Thomas' total damages by the percentage of her negligence, the jury awarded Thomas recoverable damages of $126,000.

While the jury was deliberating, attorneys for Solimini and Thomas orally agreed to settle Solimini's claims against Thomas (the Thomas settlement) for $50,000, which was purportedly the limit of Thomas' insurance coverage.  On July 12, 1996, Solimini executed a release which stated that in consideration of $50,000 "in hand paid" Solimini released and discharged Thomas from all claims against Thomas related to the Solimini case.  

The record does not show whether Solimini ever actually received the $50,0000 payment from Thomas or her insurer.  However, Solimini's attorney indicated in deposition testimony that his office may have received a check from Thomas' insurer, but, if received, the check was returned to the insurer because it included lienholders among the payees which was not acceptable to Solimini.

On September 4, 1996, Solimini agreed to settle her claims against Carney and Topsoil (the Topsoil settlement).  On the same date, Carney, Topsoil, and Topsoil's insurer obtained a release from Solimini (the Topsoil release).  The Topsoil release discharged Carney, Topsoil, and the insurer from all claims arising from Solimini's case in return for $2 million and acknowledged receipt of that amount.  On the same date, Solimini also executed a "Release and Satisfaction of Judgment" (the Topsoil satisfaction of judgment), which stated that it fully released "the judgment entered on July 1, 1996 against defendants R.C. Topsoil and Anthony M. Carney in the amount of TWO MILLION FOUR HUNDRED FIFTY THOUSAND DOLLARS AND SEVENTY-FIVE CENTS ($2,450,000.75), plus costs and statutory interests."  On September 6, 1996, pursuant to the terms of its settlement agreement, Topsoil delivered checks totalling $2 million to Solimini's attorney.

On September 10, 1996, Solimini's attorney signed a document entitled "Release (Satisfaction) of Judgment."  This document stated that it released the judgment of $735,000.23 (30% of $2,450,000.75) entered on July 1, 1996, against Thomas.

On November 12, 1996, Topsoil motioned for judgment on its counterclaim for contribution against Thomas.  The motion sought a judgment of $234,999.46 against Thomas.  This figure was based on Topsoil's assertion that it had paid $284,999.46 in excess of its 
pro rata
 share of the damages in the Solimini case.  Topsoil arrived at the figure of $234,999.46 by allowing $50,000 for the amount Thomas had purportedly paid Solimini pursuant to the Thomas  settlement.  In the alternative, Topsoil indicated that it was willing to accept a full satisfaction from Thomas of the $126,000 judgment against Topsoil in the Thomas case.

After conducting a hearing on the matter, the trial court entered a written order on December 18, 1996.  The order stated, 
inter alia
, the following:

"IT IS HEREBY ORDERED:

A. On the judgment entered on the verdict of $2,450,000.00 in favor of Plaintiff SOLIMINI, that R.C. TOPSOIL and CARNEY shall recover of Defendant THOMAS the sum of $735,000.00 on their counterclaim;

B. The Court further finds that the settlement entered into between Plaintiff SOLIMINI and Defendant THOMAS was in good faith, pursuant to 740 ILCS 100/2(c) and (d), and further holds that the right to pursue contribution on the counterclaim of R.C. TOPSOIL and CARNEY is barred and extinguished by nature of that good-faith settlement, pursuant to 740 ILCS 100/2(c) and (d)."

Topsoil and Carney subsequently filed a timely notice of appeal.

On appeal, Topsoil contends that the trial court erred when it ruled that the Thomas settlement was a good-faith settlement.  Before we reach the merits of the appeal, we must address the motion Thomas filed with this court to dismiss the appeal on the ground that it is moot.  We ordered the motion and the objections to it taken with the case.

Thomas contends that Topsoil's appeal is moot because section 2(e) of the Contribution Act (740 ILCS 100/2(e) (West 1996)) precludes Topsoil from seeking contribution from Thomas.  Section 2(e) provides that a tortfeasor who makes a good-faith settlement with a claimant "is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement."  740 ILCS 100/2(e) (West 1996).  Thomas maintains that Topsoil's settlement with Solimini did not extinguish Thomas' liability to Solimini and therefore, under section 2(e), Topsoil was not entitled to seek contribution from Thomas.  Thomas argues that the question of whether her own settlement with Solimini was made in good faith is therefore moot.

Topsoil first responds that Thomas is barred from making her section 2(e) argument in this court because she did not file a cross-appeal.  Topsoil asserts that the section 2(e) argument Thomas makes in her motion in this court to dismiss the appeal is the same argument that she made in the trial court.  Topsoil further asserts that the trial court expressly ruled against Thomas with respect to her section 2(e) argument.  Topsoil maintains that, on the basis of its rejection of Thomas' section 2(e) argument, the trial court entered a $735,000 contribution judgment against Thomas.  Topsoil argues that, when a decision contains a specific adverse finding to an appellee, such as the trial court's ruling on Thomas' section 2(e) argument, the appellee must file a cross-appeal in order to raise the issue on appeal.  In Topsoil's view, because Thomas did not file a cross-appeal, she is barred from raising the section 2(e) argument in her motion with this court and has waived the argument for appeal.

Trial court findings adverse to an appellee do not require the appellee's cross-appeal if the trial court judgment was not at least in part against the appellee.  
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387 (1983).  A party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment.  
Geer v. Kadera
, 173 Ill. 2d 398, 413 (1996).  

In this case, Thomas obtained all that she was asking for with respect to Topsoil's motion for judgment on its counterclaim for contribution.  Thomas wanted a judgment that barred Topsoil's contribution claim.  The judgment did exactly that.  It is true that Thomas made two distinct arguments in the trial court that the contribution claim was barred.  The first argument was based on section 2(e) of the Contribution Act and on Topsoil's settlement.  The second argument was based on sections 2(c) and 2(d) of the Contribution Act and on Thomas' own settlement with Solimini.  The trial court rejected the section 2(e) argument and accepted the argument based on sections 2(c) and 2(d).  Nonetheless, Thomas obtained what she wanted in the judgment.  Therefore, under the above principles, Thomas was not required to cross-appeal in order to raise the section 2(e) argument on appeal.

Topsoil's contrary argument is not persuasive.  Topsoil asserts that part of the judgment was adverse to Thomas because the judgment provided that Topsoil could recover $735,000 on its counterclaim from Thomas.  Topsoil asserts that the trial court made this adverse part of the judgment after rejecting Thomas'  section 2(e) argument, the same argument Thomas now seeks to raise on appeal.  However, the transcript of the hearing on Topsoil's counterclaim shows that the trial court did not make its ruling that Topsoil could recover $735,000 from Thomas on the basis of its rejection of Thomas' section 2(e) argument.  Rather, the trial court stated that the judgment in the Solimini case, as previously entered, was incomplete and should have incorporated the percentages of liability determined by the jury.  It was on that basis, rather than on the basis of its rejection of Thomas' section 2(e) argument, that the trial court entered the part of the judgment adverse to Thomas.

For these reasons, we conclude that no part of the judgment that§ was adverse to Thomas was based on her section 2(e) argument.  Consequently, Thomas was not required to cross-appeal in order to raise the section 2(e) argument on appeal.  We now turn to Thomas' section 2(e) argument which is the basis of her motion to dismiss the appeal.

Thomas' section 2(e) argument is premised on her view that the Topsoil release did not release her.  Thomas argues that because she was not released Topsoil was not entitled to recover contribution from her under section 2(e).  

Topsoil counters that Thomas' section 2(e) argument fails because it does not distinguish between a "release" and a "satisfaction of judgment."  Topsoil concedes that, by itself, the release did not specifically identify Thomas and therefore did not extinguish Thomas' liability to Solimini under section 2(e).  However, Topsoil contends that the satisfaction of judgment Solimini executed as part of the Topsoil settlement extinguished any liability Thomas had to Solimini, even though it did not mention Thomas.  Topsoil reasons that because the satisfaction of judgment was for the full amount of the judgment it extinguished the entire judgment and therefore also extinguished any liability Thomas had to Solimini.  

We agree with Topsoil.  Section 2(e) plainly prohibits contribution from another tortfeasor to a settling tortfeasor only if the settlement in question did not extinguish the other tortfeasor's liability.  740 ILCS 100/2(e) (West 1996).  In this case, the satisfaction of judgment that was part of the Topsoil settlement acted to extinguish Thomas' liability to Solimini even though it did not mention Thomas because it was for the full judgment amount.  See 
Meyer v. First American Title Insurance Agency of Mohave, Inc.
, 285 Ill. App. 3d 330, 339 (1996) (proper satisfaction of judgment bars any further attempts by judgment creditor to enforce judgment).  Because the satisfaction of judgment extinguished Thomas' liability to Solimini, section 2(e) of the Contribution Act did not prohibit Topsoil's contribution claim against Thomas, and, the trial court correctly ruled against Thomas' section 2(e) argument.  For the same reasons, the section 2(e) argument Thomas makes in her motion in this court does not render Topsoil's appeal moot.  Accordingly, Thomas' motion to dismiss the appeal on the ground of mootness is denied.

We now turn to the merits of Topsoil's appeal.  Topsoil contends that the trial court erred when it ruled that Thomas' settlement was a good-faith settlement and therefore discharged Thomas from contribution liability to Topsoil.  Topsoil acknowledges that under sections 2(c) and 2(d) of the Contribution Act (740 ILCS 100/2(c), 2(d) (West 1996)) a good-faith settlement between a tortfeasor and a claimant discharges the settling tortfeasor from contribution liability to other tortfeasors.  However, in Topsoil's view, the Thomas settlement did not discharge Thomas from contribution liability because it was not a good-faith settlement.

In support of its position, Topsoil first argues that Thomas failed to make a 
prima facie
 showing that her settlement agreement with Solimini was a good-faith settlement because she failed to show that Solimini received any "net consideration" in the settlement agreement.  Topsoil notes that both the Thomas release and the Thomas satisfaction of judgment recite that Solimini received $50,000 from Thomas.  However, Topsoil asserts that there is no evidence in the record to show that Solimini actually received the $50,000 prior to the trial court's good-faith finding.  Topsoil argues that Thomas therefore failed to carry her burden of establishing a 
prima facie
 showing of good faith and that the trial court erred in its good-faith ruling.

Thomas responds that she showed that her settlement agreement with Solimini was supported by consideration.  Thomas maintains that it is undisputed that she and Solimini entered an oral settlement agreement while the jury was deliberating.  Thomas further maintains that the terms of the agreement were a promise by Solimini to dismiss her claim against Thomas in exchange for a promise by Thomas to pay Solimini $50,000.  Thomas argues that these mutual promises constituted sufficient consideration to support the settlement agreement and that any delay by her in making the actual payment to Solimini was immaterial with respect to the sufficiency of the consideration.

The Contribution Act does not define the term "good faith"  and a court should therefore consider the totality of the circumstances surrounding a purported settlement to determine whether it was made in good faith.  
In re Guardianship of Babb
, 162 Ill. 2d 153, 161-62 (1994).  A settlement is considered 
prima facie
 in good faith when the settling tortfeasor establishes that the settlement was supported by consideration.  
McDermott v. Metropolitan Sanitary District
, 240 Ill. App. 3d 1, 44 (1992).  A finding as to the good faith of a settlement is within the discretion of the trial court, and a reviewing court therefore will not disturb a trial court's good-faith finding absent an abuse of discretion.  
Babb
, 162 Ill. 2d at 162.

In this case, the gist of Topsoil's contention that Thomas failed to establish a 
prima facie
 good-faith showing is that Thomas failed to show that Solimini actually received any "net consideration."  Essential to this contention is the proposition that promised consideration must be actually received before it can support a good-faith settlement
 finding. 

This proposition is contrary to general contract principles.  Ordinarily, any act or promise which is of sufficient benefit to one party or disadvantage to the other party constitutes sufficient consideration to support an agreement.  
Johnson v. George J. Ball, Inc.
, 248 Ill. App. 3d 859, 865 (1993).  In addition, mutual and concurrent promises provide sufficient legal consideration to support each other.  
Anderson v. Vrahnos
, 149 Ill. App. 3d 251, 255 (1986).

  Under these principles the mutual promises exchanged by Thomas and Solimini would normally be sufficient consideration to support their settlement agreement.  The mutual promises would therefore support a finding of 
prima facie
 good faith regarding the Thomas settlement.  

Topsoil next posits that even if Thomas and Solimini exchanged mutual promises the promises did not constitute sufficient consideration to support the settlement agreement because a higher standard of consideration is required to establish a good-faith settlement under the Contribution Act.  Applying this heightened standard to this case, Topsoil argues that the only adequate consideration supporting a good-faith finding for the Thomas settlement would be that Solimini actually received the $50,000 promised by Thomas.

In support of its position, Topsoil relies on three cases: 
Halleck v. Coastal Building Maintenance Co.
, 269 Ill. App. 3d 887, (1995), 
Alvarez v. Fred Hintze Construction
, 247 Ill. App. 3d 811 (1993), and 
Higginbottom v. Pillsbury Co.
, 232 Ill. App. 3d 240 (1992).  Topsoil focuses on language in these cases such as that in 
Halleck
 which stated: "In order for a settlement to be in good faith, the plaintiff must receive some net consideration for the settlement agreement" (
Halleck
, 269 Ill. App. 3d at 899).  Topsoil argues that this language indicates an intent to heighten the standard of consideration sufficient to support a settlement agreement in a contribution case. 

We disagree.  A careful reading of the cases relied on by Topsoil shows that 
Halleck
 and 
Alvarez
 merely adopted the "net consideration" language used in 
Higginbottom
.  The 
Higginbottom
 court used the term "net consideration" in the context of determining whether a settling tortfeasor in that case had promised anything to the plaintiff in a settlement agreement which would be a real detriment to the settling tortfeasor.  
Higginbottom
, 232 Ill. App. 3d at 256.  The court determined that the settling tortfeasor's apparent detriment was illusory because the tortfeasor had not promised to pay anything in the settlement agreement that it could not recoup and that it therefore had not promised any net consideration as required by the Contribution Act.  
Higginbottom
, 232 Ill. App. 3d at 256.

Thus, at most, these cases stand for the proposition that a settling tortfeasor must agree to pay something to the plaintiff which is a real detriment to the settling tortfeasor in order for a settlement agreement to be a good-faith settlement.  The cases do not stand for the proposition urged by Topsoil that whatever was promised must actually be received by the plaintiff before it can be considered sufficient consideration.

In this case, in their oral settlement agreement, Thomas promised to pay Solimini $50,000 in return for a release by Solimini.  Topsoil does not argue that the payment which Thomas promised to make to Solimini would not be a real detriment to Thomas.  Therefore, when Solimini received Thomas' promise of the $50,000 payment, she received sufficient net consideration from Thomas to support the settlement agreement.

For these reasons, we conclude that Thomas made a showing of consideration in support of her settlement agreement with Solimini which was sufficient to establish a 
prima facie
 good-faith settlement.  We therefore reject Topsoil's contention that Thomas failed to establish a 
prima facie
 good-faith settlement.

Topsoil also argues that the Thomas settlement was not a good- faith settlement because it was only consummated after the Topsoil settlement by which time Solimini no longer had any claims against Thomas to be settled.  This argument is clearly premised on Topsoil's position that Solimini did not receive adequate consideration from Thomas prior to Topsoil's settlement.  However, we have determined that Solimini received sufficient consideration from Thomas to support their settlement agreement when Solimini accepted Thomas' promise to pay $50,000 to Solimini.  For this reason, Topsoil's argument that the Thomas settlement was not consummated prior to a time when there was nothing to be settled fails.

Topsoil next contends that there was evidence of bad faith with respect to the Thomas settlement beyond the consideration issue.  Topsoil first asserts that bad faith was somehow shown by the inconsistence of the Thomas settlement with one of the policies underlying the Contribution Act, namely, the policy of equitably apportioning damages among joint tortfeasors.   Topsoil notes that the trial court's finding that the Thomas settlement was a good- faith settlement not only barred Topsoil from recouping any of the excess 
pro rata
 portion of its payment to Solimini, but also allowed Thomas to attempt to collect on her $126,000 judgment against Topsoil.  Topsoil asserts that this result will allow Thomas to make money through her settlement with Solimini because, after collecting the $126,000 from Topsoil, Thomas will be $76,000 ahead without being required to contribute to Topsoil for its excess 
pro rata
 payment in the Solimini case.  Topsoil argues that such a result is inconsistent with the policy underlying the Contribution Act of equitable apportionment of damages among tortfeasors and that the trial court abused its discretion by allowing this result when it ruled that the Thomas settlement was a good-faith settlement.

Topsoil's position would require a trial court to take into account an independent case when deciding whether a settlement agreement in a contribution action between the same parties stemming from another case was made in good faith.  We can discern no such requirement either in the language of the Contribution Act or in the policy underlying the Contribution Act of equitably apportioning damages among tortfeasors.  Topsoil is essentially arguing for the addition of limitations to the Contribution Act which are not expressed in the language of the Act or in its underlying policies.  We decline to impose such limitations.

Topsoil next contends that the trial court failed to fulfill its obligation to conduct an evidentiary hearing as to whether the $50,000 Thomas promised to pay Solimini was the full limit of Thomas' insurance coverage.  Topsoil asserts that, notwithstanding the trial court's statement that there was no dispute as to the amount of Thomas' insurance, there is nothing in the record to show that Topsoil ever agreed with that finding and that Thomas offered no proof that $50,000 was the actual limit of her coverage.  Topsoil acknowledges that Thomas' attorney argued in a trial court brief that $50,000 was the limit of Thomas' insurance, but Topsoil considers these arguments as nothing more than unsubstantiated allegations not sufficient to support a good-faith finding.

Thomas responds that the trial court properly accepted the statement of her attorney as to the amount of her insurance.  Thomas also asserts that whether the $50,000 actually constituted her coverage limits was not determinative of good faith because the $50,000 amount, in view of the circumstances surrounding the settlement agreement, was sufficient to show that the settlement was a good-faith settlement.

The Contribution Act does not specify the type of proceedings necessary to determine whether a settlement was a good-faith settlement.  See 
Pritchard v. SwedishAmerican Hospital
, 199 Ill. App. 3d 990, 996 (1990) (good-faith determination left largely to trial court discretion based on arguments of counsel, affidavits, depositions, other discovery material, or evidence received at hearing).  It has been said that a court should not enter a good- faith finding without conducting an evidentiary hearing.  
Muro v. Abel Freightlines, Inc.
, 283 Ill. App. 3d 416, 419 (1996).  However, the type of evidentiary hearing required is within the discretion of the trial court.  
Muro
, 283 Ill. App. 3d at 419.

In this case, the trial court addressed the question of the amount of Thomas' insurance limit during the hearing on Topsoil's contribution claim.  At that hearing, Thomas' attorney plainly stated that the $50,000 Thomas agreed to pay Solimini was the limit of her insurance coverage.  More than once during the hearing, the trial court indicated a willingness to conduct a further evidentiary hearing on the matter if Topsoil wanted such a hearing.  Topsoil did not request such a hearing.  On this record, it was not an abuse of discretion for the trial court to make its good-faith finding without an additional evidentiary hearing.

We also agree with Thomas that whether $50,000 was the actual limit of her insurance coverage was not necessarily determinative of the good faith of her settlement with Solimini.  When Thomas settled with Solimini, the jury was still deliberating and it was therefore unknown whether the jury would find Thomas liable at all.  Under these circumstances and in view of the facts pertaining to Thomas' culpability, Thomas and Solimini could reasonably agree in good faith to settle with each other for $50,000, regardless of the limits of Thomas' insurance coverage.

Finally, Topsoil contends that the good-faith finding as to the Thomas settlement was both procedurally and substantively defective because the trial court made its finding at an improper time and in an improper context.  Topsoil bases its contention on the fact that Thomas did not seek a good-faith finding regarding her settlement agreement with Solimini before Topsoil sought the entry of a contribution judgment against Thomas.  Topsoil argues that the trial court erred when it allowed Thomas to seek a 
de facto
 good-faith finding during the hearing on Topsoil's motion to seek contribution from Thomas.

Topsoil is arguing that a tortfeasor who enters a settlement agreement with a plaintiff in a case involving multiple tortfeasors must immediately obtain a good-faith finding in order for the settlement agreement to be a good-faith settlement.  Topsoil made this same argument in the trial court at the hearing on its motion to seek a contribution judgment against Thomas.  The trial court considered the argument and rejected it on the ground that the Contribution Act does not require a good-faith finding, but only requires that a settlement be in good faith.

We agree with the trial court's reasoning.  We find nothing in the language of the Contribution Act which requires that a tortfeasor immediately seek a good-faith finding after entering a settlement agreement.  We therefore conclude that Thomas' decision  not to seek an immediate good-faith finding was not inconsistent with the Contribution Act.

Topsoil's argument that it was prejudiced by the delay in Thomas seeking a good-faith finding does not change our conclusion.  There is nothing in the record to show that Topsoil made any inquiries as to the possibility of other settlements in the Solimini case before it entered its settlement with Solimini.  Consequently, Topsoil was itself responsible for any prejudice it might have suffered from not knowing that Thomas had already settled when it entered its settlement agreement with Solimini.

Based on the foregoing, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

THOMAS and RATHJE, JJ., concur.