NO. 4-97-0916

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Interest of J.B., J.B., J.B., ) Appeal from

K.B., D.D. and L.A.D., Alleged to be ) Circuit Court of

Abused and Neglected Minors, ) McLean County

THE PEOPLE OF THE STATE OF ILLINOIS, )    Nos. 91J2

Petitioner-Appellant, ) 92J64

v. ) 

JOSEPH DEERWESTER, ) 

Respondent-Appellee. ) Honorable

) Elizabeth A. Robb,

) Judge Presiding.

JUSTICE GREEN delivered the opinion of the court: 

The State appeals from an order entered by the circuit court of McLean County on September 18, 1997, dismissing its petition to terminate the parental rights of respondent, Joseph Deerwester, to D.D. (born October 5, 1989) and L.D. (born April 16, 1991) in McLean County case Nos. 91-J-2 and 92-J-64, respec­tively.  On appeal, the State contends that evidence of respon­dent's criminal convictions for offenses against his stepchildren in McLean County case No. 91-CF-22 was sufficient for the trial court to have found that respondent was an unfit parent based on depravity (750 ILCS 50/1(D)(i) (West 1996)).  We agree with the State and reverse and remand to the trial court.

Respondent had four minor stepchildren with whom he lived in a one-room trailer and raised as his own children with their mother, his wife, Sherry Deerwester.  Those children are Je.B. (born December 21, 1983), Jo.B. (born December 28, 1984), Ja.B. (born March 17, 1986), and K.B. (born May 28, 1988).  Respondent and Sherry had two children of their own, D.D. and L.D., who are the subjects of the termination proceedings against respondent.  L.D. never lived with respondent as she was born after respondent was incarcerated.  Sherry is not a respondent to the instant termination proceedings.

On January 11, 1991, the four stepchildren and D.D. were taken into protective custody due to allegations of neglect and abuse.  An investigation ensued by the Bloomington police department and, on February 14, 1991, respondent was criminally charged with seven counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12-14(b)(1)), two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12-16(c)(1)), unlawful restraint (Ill. Rev. Stat. 1989, ch. 38, par. 10-3)), and cruelty to children (Ill. Rev. Stat. 1989, ch. 23, par. 2368), based upon acts respondent committed against his four stepchildren.  On April 24, 1991, the four stepchildren and D.D. were adjudicated wards of the court based upon a finding that the children were neglected and abused, the Department of Children and Family Services (DCFS) was appointed guardian, and a protective order was entered prohibiting respondent from having any contact with the children.  On September 5, 1991, L.D. was adjudicated a ward of the court based on a finding that she was a neglected minor.

On March 13, 1992, following a jury trial, respondent was found guilty of each of the 11 counts.  The trial court imposed three consecutive terms of 40 years' imprisonment with concurrent sentences of 45, 30, 10, 5, and 5 years' imprisonment.  On direct appeal, this court upheld all convictions, except count VIII alleging aggravated criminal sexual assault.  This court reversed the conviction and sentence as to that count and upheld the other sentences, with certain reductions, in all other counts.  
People v. Deerwester
, 249 Ill. App. 3d 1109, 660 N.E.2d 569 (1993) (unpublished order under Supreme Court Rule 23).

On May 23, 1994, the State filed an amended petition to terminate respondent's parental rights to D.D. and L.D.  The petition alleged respondent was an unfit parent as defined by section 1(D) of the Adoption Act (Act) (750 ILCS 50/1(D) (West 1996)), as follows:

"A.  The minor's father was convicted of inflict­ing sexual abuse and other acts of physical violence on four half-siblings of [D.D.] and [L.D.] in McLean Coun­ty case No. 91-CF-22, such acts were of a de­praved nature and demonstrate [respondent's] unfit­ness to have a child.  [750 ILCS 50/1(D)(i) (West 1994).]

B.  The minor's father was convicted of inflicting sexual abuse and other acts of physical violence on four half-siblings of [D.D.] and [L.D.] in McLean Coun­ty case No. 91-CF-22, such acts being other [than] ne­glect of, or misconduct toward the chil­dren.  [750 ILCS 50/1(D)(h) (West 1994).]

C.  The minor's father was convicted of inflicting sexual abuse and other acts of physical violence on four half-siblings of [D.D.] and [L.D.] in McLean County case No. 91-CF-22, such acts constitute ex­treme or re­peated cruelty to the children.  [750 ILCS 50/1(D)(e) (West 1994­).]

D.  The minor's father failed to make rea­sonable efforts to correct the conditions which were the basis for the removal of the children.  [750 ILCS 50/1(D)(m) (West 1994).]

E.  The minor's father failed to make reasonable progress toward the return of the [children to] him within 12 months of the adjudication of the child under the Juve­nile Court Act [of 1987 (705 ILCS 405/2-3 (West 1994)).  750 ILCS 50/1(D)(m) (West 1994)]."

Subsequently, adjudicatory hearings were held on the petition.  The court took judi­cial notice of the 11-count indict­ment of which respondent was con­victed in case No. 91-CF-22.  That 11-count indictment, excluding count VIII (which this court held on direct review was not sufficiently proved at trial) charged respondent with placing his penis in Jo.B.'s mouth (count I), placing Jo.B.'s penis in respondent's mouth (count II), and placing respondent's penis in Jo.B.'s anus (count VII).  Respon­dent was further charged with placing his penis in K.B.'s mouth (count III), placing respondent's penis in the hand of Ja.B. (count VI), placing respondent's penis in Ja.B.'s anus (count IX), placing respondent's penis in Ja.B.'s mouth (count X), and placing respondent's penis in the hand of Je.B. (count XI).  The indict­ment further alleged respon­dent committed unlaw­ful re­straint against Ja.B. in that respon­dent tied Ja.B. up with a rope (count IV) and commit­ted cruelty to children against Ja.B. by throwing Ja.B. against a board, causing a large cut on Ja.B.'s chin (count V).  At the time of the indictment, Je.B. was seven years old, Jo.B. was six years old, Ja.B. was four years old, and K.B. was two years old.

At the termination hearing, the trial court allowed the State's motion to with­draw its request that the court review the tran­scripts of the criminal proceedings.  Thus, the only evidence of respon­dent's criminal conduct was in the form of certified copies of his convictions, the indictment, and this court's order on direct appeal.  Other evidence was presented by the State relat­ing to respondent's compliance with DCFS caseworkers and his service plan goals.  

Section 1(D) of the Act sets forth the statutory grounds for parental unfitness, including "depravity."  750 ILCS 50/1(D)(i) (West 1996).  The Supreme Court of Illinois has defined depravity in this context as "'"an inherent deficiency of moral sense and rectitude."'"  
In re Abdullah
, 85 Ill. 2d 300, 305, 423 N.E.2d 915, 917 (1981), quoting 
Stalder v. Stone
, 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952), quoting 26 C.J.S. 975; 
Young v. Pra­ther
, 120 Ill. App. 2d 395, 397, 256 N.E.2d 670, 671 (1970).  The trial court here found the State failed to prove that respon­dent was an unfit parent because the "heinous and unspeakable acts" of which he was found guilty of committing against his stepchil­dren did not establish he was depraved as to his biologi­cal children, D.D. and L.D., who are the subjects of the termina­tion petition.

We disagree with the trial court and reject respon­dent's argument that proof of his criminal convictions in case No. 91-CF-22, standing alone, did not serve as a basis for a finding of depravity relating to D.D. and L.D. solely because his victims were stepchildren rather than biological children.  We also reject respondent's argument that the State was required to present evidence, presumably the trial transcript, of the under­lying facts of the criminal conduct because somehow respondent's sexual misconduct with his stepchildren, as compared to his biological children, could conceivably be found to be not de­praved if all the underlying facts were known.  Respondent does not dispute that evidence of parental unfitness regarding one child may serve as the basis for terminating parental rights to that child's siblings, even if the siblings were not directly abused or had not been born at the time the abuse occurred.  
In re S.H.
, 284 Ill. App. 3d 392, 400, 672 N.E.2d 403, 408-09 (1996).  As we will discuss, we hold that proof of respondent's crimi­nal conduct against his stepchildren, as known to the court by certified copies of his convictions and the indictment, was, alone, sufficient proof of his depravity and "inherent defi­ciency of moral sense and rectitude" to prove his unfitness to parent D.D. and L.D.

The instant case is similar to this court's recent decision in 
S.H.
.  There, the respondent father pleaded guilty in criminal proceedings of placing his penis in his five-year-old daughter's vagina and mouth on several occasions and was sen­tenced to an eight-year term of imprisonment.  Based solely on the evidence of these convictions, the State sought to terminate respondent's parental rights to the daughter and her two siblings based on depravity.  At an adjudicatory hearing, the respondent admitted the allegations of sexual misconduct against the daugh­ter.  At the termination hearing, the State merely requested the trial court to take judicial notice of respondent's criminal convictions.  The trial court concluded the State presented a 
prima
 
facie
 case of parental unfitness based on depravity and noted that it had reviewed the report of proceedings in the criminal case.  This court affirmed the trial court's termination order.

In affirming, this court discussed the 
Abdullah
 deci­sion, where the supreme court considered whether evidence of the respondent's conviction for murdering his ex-wife, the mother of the child to whom the State sought to terminate the respon­dent's parental rights, in itself, was sufficient to establish deprav­i­ty.  The supreme court held that, there, evidence of the convic­tion, the fact that the murder victim was the child's mother, and the trial court's imposition of extended-term sentences due to the heinous circum­stances sufficiently proved depravity.  This court in 
S.H.
 refused to interpret 
Abdullah
 to hold that in all cases a single criminal conviction, without more, will not support a finding of unfitness due to depravity.  This court held that the facts in 
S.H.
 were distinguishable from murder cases because no set of circumstances could conceivably establish that the respondent's perverted sexual conduct toward his five-year-old daughter would not amount to depravity.  Accordingly, this court held: 

"[A] parent who commits acts like these upon his or her own chil­d[ren] is subject to being found unfit due to depravity based 
solely
 upon that conduct, and that parent thereby forever for­feits any claim to any fur­ther contact with that child or his or her sib­lings."  (Emphasis in original.)  
S.H.
, 284 Ill. App. 3d at 400, 672 N.E.2d at 408.

We conclude the holding in 
S.H.
 is equally applicable to the instant case where the sexually abused stepchildren have been raised as respondent's own biological children.  The fact that respondent here was convicted following a trial and the respondent in 
S.H.
 pleaded guilty to the criminal offense does not alter this conclusion.  Accordingly, proof of respondent's crimi­nal convictions, based on the allegations set forth in the indict­ment, in itself establishes respondent's depravity and unfitness to parent D.D. and L.D.  The trial court abused its discretion in failing to so find.

Respondent also contends the trial court erred in not allowing respondent's proffered testimony of Professor Kathleen Alison Clark-Stewart.  The record indicates the court allowed respondent's offer of proof of the professor's testimony, but denied admission of the evidence on the grounds it was an attempt to relitigate the criminal trial and juvenile adjudications.

On appeal, the State contends this court should not consider this issue because respondent failed to file a cross-appeal.  On November 4, 1997, this court denied respondent's motion for leave to file a late 
pro
 
se
 notice of cross-appeal of interlocutory orders as being unnecessary.  In a motion to strike this portion of the State's argument because the State failed to cite to any support­ing authority, respondent refers to 
Solimini v. Thomas
, 293 Ill. App. 3d 430, 434-35, 688 N.E.2d 356, 359 (1997).  There, the Second District Appellate Court noted that "[t]rial court find­ings adverse to an appellee do not require the appellee's cross-appeal if the trial court judgment was not at least in part against the appellee."  
Solimini
, 293 Ill. App. 3d at 434, 688 N.E.2d at 359.  We agree.

However, we do not believe the trial court abused its discre­tion in refusing to admit the testimony of Professor Clark-Stewart.  The record indicates Professor Clark-Stewart developed a written report based on an evaluation of the police interviews with respondent's stepchildren and those children's trial testi­mony, concluding that all the children's accusations were not credi­ble.  Professor Clark-Stewart also testified generally, without ever meeting respondent, that she believed respondent could change his behavior.

In 
In re Boolman
, 141 Ill. App. 3d 508, 512, 491 N.E.2d 1, 3 (1986), this court, in a termination proceedings, rejected the respondents' argument that the trial court should have granted them a summary judgment on the termination petition where they filed an affidavit stating the minor children had not been abused and they had cooperated with their counselors.  The State failed to file a counteraffidavit.  This court reasoned the respondents were collaterally estopped from denying a previous court's determination adjudicating the minor neglected.

Here, Professor Clark-Stewart's testimony regarding her report was an attempt by respondent to deny the criminal conduct he performed against his stepchildren, upon which judgments of convictions have already been entered.  This evidence is distin­guishable from evidence that the court in 
Abdullah
 considered as admissible when the State had made a 
prima
 
facie
 case of depravi­ty and the burden shifted to the respondent to "explain away the damning evidence of the conviction, the relationship of the victim to the child, and the sentence.  If there were exonerating circumstances that would rebut the initial showing of depravity, defendant was free to present them."  
Abdullah
, 85 Ill. 2d at 307, 423 N.E.2d at 918.  Professor Clark-Stewart's testimo­ny on her report, attacking the credibility of the step­children, cannot be considered exonerating circumstances.  Moreover, as already discussed, this case is very similar to 
S.H.
 where this court distinguishes these kind of circumstances from the circumstances of murder, as in 
Abdullah
, on the basis that no set of exonerat­ing circumstances can really exist when a parent is guilty of commit­ting a number of sexual assaults on his children or, as here, his stepchildren.  The trial court here did not abuse its discretion in refusing to admit the testimony of Professor Clark-Stewart.

Because of our determination that the trial court abused its discretion in not finding respondent was depraved and an unfit parent based on the evidence before it, we need not discuss the State's alternative arguments that it had sufficient­ly proved the other allegations of the termination petition.

Accordingly, for the reasons we have discussed, we reverse the trial court's dismissal of the State's termination petition and remand for further proceedings.

Reversed and remanded.

GARMAN, P.J., and STEIGMANN, J., concur.