85 Ill.2d 300 (1981)
423 N.E.2d 915
In re HANNIBAL ABDULLAH, Minor
(The People of the State of Illinois, Appellant,
v.
Lonnie Abdullah, a/k/a Yumba Lasumba, Appellee).
No. 53222.
Supreme Court of Illinois.
Opinion filed June 26, 1981.
*301 *302 Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Donald B. Mackay, Melbourne A. Noel, Jr., Thomas E. Holum, and Jack Donatelli, Assistant *303 Attorneys General, of Chicago, and Gary J. Anderson and Robert Biderman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.
Marcia Rotunda and Greaves, Lerner & Gadau, of Champaign, for appellee.
Appellate court reversed; circuit court affirmed.
MR. JUSTICE SIMON delivered the opinion of the court:
The circuit court of Champaign County found the defendant to be an unfit father under the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501 et seq.). The finding was based on depravity. As a result, the defendant's consent to the adoption of his son, Hannibal Abdullah, was not required. The Department of Children and Family Services was appointed guardian with authority to consent to adoption. The sole issue to be determined is whether the evidence supports the finding of parental unfitness by reason of depravity.
Defendant has been found guilty in a jury trial of murdering his ex-wife, Anna Abdullah, the mother of Hannibal. In order to prove in this proceeding that defendant was depraved and therefore unfit, the State introduced the testimony of an assistant State's Attorney, one of the prosecutors at his murder trial. The witness identified defendant as the accused in the murder trial, stated what the jury verdict was, and said that the post-trial motion had been denied. He testified that the defendant had been sentenced to a prison term of 60 years, though the basis for the extended term was not explained. He also said Hannibal was 3 years old at the time of his mother's death. The State offered no other evidence.
Defendant testified that his conviction was pending on appeal, that his only prior conviction had been in 1963 or 1964 for battery, and that he did not kill his ex-wife.
At the close of the testimony the State asked the court *304 to take judicial notice of the court file and docket sheet in the murder prosecution. The circuit court did so and, based upon the evidence presented, found that the State had proved defendant depraved and unfit.
A divided appellate court reversed. (80 Ill. App.3d 1144.) The court's opinion stated that while the factual evidence that formed the basis of the murder conviction might show depravity, the mere fact of conviction did not. Since only the mere fact of conviction was before the trial court, the finding of depravity could not stand. (80 Ill. App.3d 1144, 1146.) A specially concurring opinion emphasized the need to flesh out the factual record in the case to clearly show depravity. The third judge argued that the sentence of 60 years could only be interpreted as an extended term under section 5-5-3.2 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005-5-3.2), and that this was sufficient to establish that the child's mother had been killed by exceptionally brutal or heinous behavior indicating wanton cruelty. That judge suggested that the act of killing Anna Abdullah was inherently depraved and that the evidence before the court justified the judgment. 80 Ill. App.3d 1144, 1148.
This court granted leave to appeal under Rule 315 (73 Ill.2d R. 315). After oral argument and consideration, a decision was announced on December 1, 1980, with four justices holding that the State had failed to meet its burden of proof because the factual underpinnings for the extended term were not before the court. Because the best interests of the child were at stake, the majority remanded the cause to the circuit court for a new trial. The dissent, like the third judge in the appellate court, expressed the view that when the State brought forward the defendant's extended prison term the burden shifted to the defendant. The dissent reasoned that the defendant had not satisfied this burden and that he was therefore shown to be unfit. But to delay the child's placement *305 until after the criminal appeal was resolved, the dissent suggested staying the mandate of this court.
On December 30, 1980, the appellate court affirmed the defendant's conviction in the murder prosecution (People v. LaSumba (1980), 92 Ill. App.3d 621), and defendant's petition for leave to appeal his conviction to this court was denied on March 31, 1981.
We allowed the State's petition for rehearing in this case, and additional argument was heard on March 11, 1981. We now reverse the decision of the appellate court and affirm the judgment of the circuit court that defendant is an unfit parent whose consent to adoption is not required.
Section 8 of the Adoption Act provides:
"[C]onsents shall be required in all cases, unless the person whose consent would otherwise be required shall be found by the court to be an unfit person as defined in Section 1 of this Act * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 1510.)
Section 1(D) of the Act states:
"`Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following:
* * *
(i) Depravity." (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D).)
The Adoption Act does not define "depravity," but this court has held that depravity is "`an inherent deficiency of moral sense and rectitude.'" (Stalder v. Stone (1952), 412 Ill. 488, 498; see Young v. Prather (1970), 120 Ill. App.2d 395, 397.) In construing "depravity," both the rights of the parent and the best interest of the child must be considered.
As background to this decision, unfitness under the Adoption Act should be contrasted with unfitness for purposes of child custody under the Illinois Marriage and *306 Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 et seq.). There are differing consequences in each situation. Divorced spouses who lose custody of their children may still retain visitation rights and the legal status of parents. They retain rights to their child, subservient to the custodial spouse but greater than those of the rest of the world. Thus, for example, a parent whose living arrangements threaten the moral future of the children may lose custody, but still remain the children's parent. (See, e.g., Jarrett v. Jarrett (1979), 78 Ill.2d 337.) The parent may regain custody in the future if circumstances substantially change or if the custodial spouse dies. (See, e.g., Eaton v. Eaton (1977), 50 Ill. App.3d 306.) But a parent who, because of a finding of depravity, is held unfit under the Adoption Act loses not only the custody of the child but also all residual parental rights. The child is given to new parents without the consent of the old. For all practical purposes, the natural parent becomes a non-person to the child. The question here is how much evidence is enough to trigger this realignment of natural relationships.
Several decisions in the appellate court, none involving murder, have held that a single criminal conviction, without more, will not support a finding of unfitness based on depravity. (In re Sanders (1979), 77 Ill. App.3d 78, 82; In re Adoption of Kleba (1976), 37 Ill. App.3d 163, 166; Townsend v. Curtis (1973), 15 Ill. App.3d 209, 212, cert. denied (1977), 431 U.S. 907, 52 L.Ed.2d 391, 97 S.Ct. 1702.) The State conceded this point, but argues that here there was other evidence which, taken in conjunction with the evidence of murder, sufficiently proved depravity.
Three separate factors in the evidence showed defendant's depravity. First, he was convicted of murder, the most serious criminal offense there is. Few acts could be more inherently deficient in moral sense or rectitude than *307 the intentional and unjustified killing of a fellow human being. Second, the murder victim was the mother of the child. Defendant thus deprived his son of his mother and further heightened the psychological scarring caused by a family already broken by divorce. Finally, the extended term of imprisonment imposed indicates that the murder was accompanied by exceptionally brutal and heinous behavior demonstrating wanton cruelty. (See Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005-5-3.2(b)(2); 1005-8-2.) Taken together, these three factors establish that defendant suffered from an inherent deficiency of moral sense and rectitude. They show depravity.
Defendant argues that a more detailed factual basis was necessary to foreclose the possibility that there were circumstances surrounding the killing of Anna Abdullah that would indicate that defendant was not depraved. He argues that the best interest of the child in such cases forbids a per se rule of depravity and requires a case-by-case determination of all the facts that might be relevant to the parent's unfitness. But it is not the State's obligation to foreclose all possible explanations that would show the parent to be fit. The evidence presented by the State made out a prima facie case of depravity. The burden of going forward then shifted to the defendant to explain away the damning evidence of the conviction, the relationship of the victim to the child, and the sentence. If there were exonerating circumstances that would rebut the initial showing of depravity, defendant was free to present them; the burden of persuasion always remained on the State to prove unfitness. But no such circumstances were shown here. Based on all the evidence presented the State satisfied its burden.
It should be noted that the circuit court took judicial notice of the court file and docket sheet in the murder prosecution, and that the standard of proof in that proceeding was far greater than in this case. The transcript of *308 the criminal trial provides the meat on the bare bones of the State's evidence that the defendant demands. It is proper to take judicial notice of the record in the murder prosecution, for it falls "within the category of readily verifiable facts which are capable of `instant and unquestionable determination.' (9 Wigmore, Evidence sec. 2571, at 548 (3d ed. 1940).)" (May Department Stores Co. v. Teamsters Union Local No. 743 (1976), 64 Ill.2d 153, 159; see, e.g., Walsh v. Union Oil Co. (1972), 53 Ill.2d 295, 300; Blyman v. Shelby Loan & Trust Co. (1943), 382 Ill. 415, 419-20.) The record of proceedings in the murder prosecution having now been presented to this court by the defendant in his petition for leave to appeal from the conviction, this court is free to consider the evidence in that case. Perusal of the record of proceedings in that case puts to rest any nagging doubts that the circuit court erred in finding defendant depraved. It convincingly demonstrates that defendant is an unfit person by reason of depravity.
The evidence in his criminal case shows that defendant and his victim, Anna Abdullah, were divorced in 1976 after a two-year marriage. Hannibal was their only child. After the divorce Hannibal stayed primarily with his mother, although he made several week-long visits to his father in St. Louis. During the summer of 1978, defendant spent several weeks with his ex-wife and son at her home in Champaign. He and the victim argued about the quality of care Hannibal had been receiving from his mother. Anna permitted the defendant to take Hannibal back to St. Louis with him the first week in August.
However, several days later Anna demanded her son's return, threatening by phone that she would call the police if the boy was not returned in 24 hours. On August 28, defendant called his ex-wife to tell her that he would bring Hannibal to Champaign the next day. On the morning of August 29, Anna left her home saying that she was *309 going to buy some food stamps and pick up Hannibal. The father and son traveled to Champaign by bus, arriving about noon. They were met by the mother and, after a light lunch, the three went to a motel which Anna had checked into that morning.
Defendant and Hannibal left Champaign about 3:30 p.m. and drove Anna's car to St. Louis. Defendant dropped his son off with his wife, then returned to Champaign, stopping for gas along the way. The attendant at the service station where defendant stopped placed the time of his arrival at the station at about 9 p.m.; the station was about 100 miles from Champaign. When defendant arrived in Champaign he went to the motel room, then to the police station, parking his car on a side street. At about midnight he informed the officer at the desk that a woman's body would be found in the motel room.
Anna Abdullah was found lying on the motel floor, stabbed many times in the side and back of her neck. A large kitchen knife lay next to her head. Blood was found on the wall, in the bathroom, in a sink in the room, and in a large pool at her head. The room light and the television were on; the victim's purse was undisturbed. Change and cigarette butts were found in ashtrays in the room. No fingerprints of the defendant were found in the room, but blood was found on his pants. Both he and his ex-wife had the same blood type. He said that the stain on his pants was his own blood from a cut he had suffered on the bus ride to Champaign.
Defendant testified at trial that when they arrived at the motel that afternoon he and his ex-wife went into the motel room alone. Hannibal stayed in the car. Anna agreed that Hannibal could return to St. Louis with his father for a week. Defendant was supposed to appear in court with Anna in 3 days (although he had not brought a change of clothes with him to Champaign), so Anna agreed that her ex-husband could drive her car back to St. Louis with *310 Hannibal. He was to return alone that evening. When defendant and Hannibal left, Anna was alone at the motel; defendant kept a key to the room. Defendant testified that when he returned that night he found Anna's body, and that at first he went to inform Anna's daughter but changed his mind on the way and went to the police station instead.
The defendant argues that his conviction for murder should not have been used before appeals in the case were decided. He urges that the murder conviction might have been reversed, thus totally impeaching the adoption proceeding. He points out that then, assuming no reconviction at a new trial, justice would require that he regain his son. The dangers of relying on a conviction that is not yet final can readily be seen. But the interests of finality and judicial economy require that at some point a line must be drawn, after which it is proper to use the conviction. In any event, defendant has exhausted all State appeals from his criminal conviction, and is unable to show that he was prejudiced when the court proceeded to trial in this matter before those appeals took place. Now that this court has denied leave to appeal, the likelihood that defendant's conviction will yet be reversed is slight. The evidence used in this proceeding in the circuit court is therefore unimpeached, and the finding of defendant's parental unfitness is unshaken.
Moreover, the paramount consideration in this case is what will happen to Hannibal. (Ill. Rev. Stat. 1977, ch. 40, par. 1525.) His best interests must be considered, and further delay in the disposition of this case is not in his best interest. Hannibal is already 6 years old. His future should be settled as quickly as possible.
The majority opinion announced by this court on initial consideration of this case conceded that the extended prison term would be an independent factor towards support of a finding of depravity if the factual basis *311 for the sentence was before the trial court. It proposed a remand for the purpose of putting such evidence in the record. But the factual basis for the extended term is now before this court, as set out above. It would be a needless formality to remand the cause in its present posture, postponing the determination without altering the result. We are satisfied that the totality of the evidence to which we have referred shows the defendant to be unfit, and so reverse the appellate court and affirm the judgment of the circuit court. See Altevogt v. Brinkoetter (1981), 85 Ill.2d 44.
Appellate court reversed; circuit court affirmed.
MR. JUSTICE CLARK, specially concurring:
I concur in the judgment of the majority. This case stands for the proposition that a showing that a person has been convicted of the murder of his wife, the mother of his child, and sentenced to an extended term of 60 years in prison clearly and convincingly establishes depravity sufficient to dispense with the person's consent to his child's placement for adoption. In the first opinion issued by this court, the majority held that facts underlying the conviction were needed before depravity would be established. Mr. Justices Underwood and Ryan joined me in dissenting from that decision, and the court subsequently granted a rehearing to reconsider the decision. Upon further reflection we have decided that the underlying facts are not needed in a case of this sort before depravity is clearly and convincingly established.
Having said that, the question arises why the facts underlying the conviction are extensively recounted in the majority opinion. I think doing so defeats the intent of the rule laid down in this case and unduly confuses anyone seeking instruction from the opinion. We have announced the rule that depravity is sufficiently shown *312 here by the murder conviction, the identity of the victim, and the extended sentence. No need is presented and no purpose is served by recounting the facts underlying the conviction.