*In re* DONALD A.G., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Tony Gaylord, Respondent-Appellant).

Fourth District   No. 4—05—0048

Opinion filed June 10, 2005.

MYERSCOUGH, J., dissenting.

Robert E. McIntire, Public Defender, of Danville, and Kimberly Edwards, of Rossville, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In August 2004, the State filed a petition to terminate the parental rights of respondent, Tony Gaylord, as to his son, Donald A.G. (born July 16, 2003). Following a November 2004 hearing on that petition, the trial court found respondent unfit. Following a December 2004 hearing, the court found that it would be in Donald's best interest to terminate respondent's parental rights.

Respondent appeals, arguing that the trial court's unfitness and best-interest findings were against the manifest weight of the evidence. Because we agree with respondent's first argument, we reverse.

## I. BACKGROUND

In January 2004, the State filed a petition for adjudication of wardship, alleging that Donald was a neglected minor in that his mother, Heather Miller, did not provide him with the proper or necessary care by giving him inadequate food (705 ILCS 405/2—3(1)(a) (West 2002)). (The trial court later terminated Miller's parental rights; however, she is not a party to this appeal.)

Following a February 2004 adjudicatory hearing, the trial court entered an order adjudicating Donald a neglected and dependent minor. Following a March 2004 dispositional hearing, the court adjudicated Donald a ward of the court and appointed the Illinois Department of Children and Family Services (DCFS) as his guardian.

In August 2004, the State filed its petition to terminate respondent's parental rights as to Donald, which alleged that respondent was unfit in that (1) he failed to maintain a reasonable degree of interest, concern, or responsibility as to Donald's welfare (750 ILCS 50/1(D)(b) (West 2002)); (2) he was depraved due to a felony conviction in Vermilion County case No. 03—CF—247 (750 ILCS 50/1(D)(i) (West 2002)); and (3) (a) Donald was in the guardianship of DCFS, (b) when the termination petition was filed, respondent was incarcerated due to a criminal conviction, (c) respondent had little or no contact and

provided little or no support for Donald prior to respondent's incarceration, and (d) respondent's incarceration would prevent him from discharging his parental responsibilities for more than two years (750 ILCS 50/1(D)(r) (West 2002)).

Because the parties are familiar with the evidence presented at the November 2004 hearing on the State's termination petition, we discuss it only to the extent necessary to put respondent's arguments in context.

Jacqui Walters, a DCFS child-welfare specialist, testified that she became Donald's caseworker in late January 2004. Respondent was incarcerated then and had never visited with Donald. Nor had respondent contacted Walters about seeing Donald. At some point, Walters mailed respondent a copy of his client-service plan; however, her only contact with him had been in court.

The transcript of proceedings shows that the trial court admitted in evidence a copy of respondent's certified conviction for predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 2002)). However, that document is not contained in the record on appeal. (Respondent's criminal conviction is on appeal in case No. 4—04—0169.)

Respondent testified on his own behalf that he had been incarcerated since May 2003, two months prior to Donald's birth. If the pending appeal of his criminal conviction was successful and he was released from prison, he would get a job and a place to live so that he could raise Donald. Prior to his incarceration, he had worked at Plastipak in Champaign for about five months. Respondent was currently studying for his high school equivalency diploma.

When respondent's counsel asked the trial court to take judicial notice of respondent's criminal proceedings, the court replied as follows:

"I'll take judicial notice that [respondent] denied committing the offense; that it was a fairly unique fact situation in that the minor reported the allegations, subsequently recanted the allegations, and that there were issues with regard to whether there was pressure applied to the minor to get [her] to recant; but the testimony of [respondent] was that it did not happen."

On cross-examination, respondent acknowledged that (1) he had been convicted of sexual assault against a child and sentenced to 20 years in prison and (2) he was not in a position to support Donald financially. When asked if he had attempted to make contact with Donald, he replied that he did not know where Donald was. Respondent further testified that he did not have Walters' contact information with him in prison and was unable to speak with her at court appearances because he was not given that opportunity.

Based on this evidence, the trial court found respondent unfit based on two of the grounds alleged in the State's termination petition. Specifically, the court found that the State proved its allegation of unfitness based on (1) depravity (750 ILCS 50/1(D)(i) (West 2002)), due to the nature of respondent's criminal conviction; and (2) respondent's incarceration at the time of the filing of the termination petition and that his incarceration would prevent him from discharging his parental responsibilities for more than two years (750 ILCS 50/1(D)(r) (West 2002)).

At the December 2004 best-interest hearing, the trial court admitted in evidence a best-interest report prepared by DCFS. The report showed, in pertinent part, the following: (1) Donald had been living with the same foster family (who previously had adopted his brother) since he entered foster care, (2) Donald was happy and "very bonded" with his foster family, and (3) his foster family was willing to provide him with a permanent home in the event that respondent's and Miller's parental rights were terminated. DCFS recommended that respondent's parental rights be terminated so that Donald could achieve permanency.

Based on this evidence, the trial court found that it was in Donald's best interest to terminate respondent's parental rights. This appeal followed.

## II. THE TRIAL COURT'S UNFITNESS FINDINGS

### A. Depravity

Respondent first argues that the trial court's unfitness finding based on depravity (750 ILCS 50/1(D)(i) (West 2002)) was against the manifest weight of the evidence. Specifically, he contends that (1) the only evidence presented of his depravity was the mere fact of his conviction for predatory criminal sexual assault of a child and (2) his conviction alone does not constitute clear and convincing evidence of depravity under the Adoption Act (750 ILCS 50/0.01 through 24 (West 2002)). Relying on *In re Abdullah*, 85 Ill. 2d 300, 423 N.E.2d 915 (1981), and *In re S.H.*, 284 Ill. App. 3d 392, 672 N.E.2d 403 (1996), the State responds that the evidence of respondent's conviction of predatory criminal sexual assault of a child constitutes clear and convincing evidence of depravity. We agree with respondent.

■ Pursuant to section 1(D)(i) of the Adoption Act, a parent can be found unfit based on depravity. 750 ILCS 50/1(D)(i) (West 2002). A presumption of depravity that can be overcome only by clear and convincing evidence exists where the respondent has been convicted of any of the following crimes:

"(1) first degree murder in violation of paragraph 1 or 2 of

subsection (a) of [s]ection 9—1 of the Criminal Code of 1961 or conviction of second degree murder in violation of subsection (a) of [s]ection 9—2 of the [Code] of a parent of the child to be adopted; (2) first degree murder or second degree murder of any child in violation of the [Code]; (3) attempt or conspiracy to commit first degree murder or second degree murder of any child in violation of the [Code]; (4) solicitation to commit murder of any child, solicitation to commit murder of any child for hire, or solicitation to commit second degree murder of any child in violation of the [Code]; or (5) aggravated criminal sexual assault in violation of [s]ection 12—14(b)(1) of the [Code]." 750 ILCS 50/1(D)(i) (West 2002).

Section 1(D)(i) further provides as follows:

"There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least [three] felonies under the laws of this [s]tate or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within [five] years of the filing of the petition *** seeking termination of parental rights.

There is a rebuttable presumption that a parent is depraved if that parent has been criminally convicted of either first or second degree murder of any person as defined in the [Code] within 10 years of the filing date of the petition *** to terminate parental rights." 750 ILCS 50/1(D)(i) (West 2002).

Illinois courts define depravity as " 'an inherent deficiency of moral sense and rectitude.' " *Abdullah*, 85 Ill. 2d at 305, 423 N.E.2d at 917, quoting *Stalder v. Stone*, 412 Ill. 488, 498, 107 N.E.2d 696, 701 (1952).

In *Abdullah*, the supreme court held that sufficient evidence of depravity existed because (1) the respondent was convicted of murder, "the most serious criminal offense there is"; (2) the respondent was the father of the child who was the subject of the termination proceedings and the murder victim was the child's mother; and (3) the respondent's extended sentence indicated that the murder was accompanied by brutal and heinous behavior. *Abdullah*, 85 Ill. 2d at 306-07, 423 N.E.2d at 918.

In *S.H.*, this court interpreted *Abdullah* and concluded that sufficient evidence of depravity existed based on the respondent's convictions on two Class X felony charges of aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1)). Before reaching that conclusion, however, we noted that under the narrow definition of depravity as established by *Abdullah*, "the commission of most felonies, even very serious ones, will not, without more, support a finding of unfitness based on depravity." *S.H.*, 284 Ill. App. 3d at 398-99, 672 N.E.2d at 407. We then noted that the trial court took judicial notice of the record from the respondent's criminal trial, which showed

that he pleaded guilty to placing his penis in the vagina and mouth of his five-year-old daughter, who was the subject of the termination proceedings. We held that this information alone was sufficient evidence of depravity under the Act. *S.H.*, 284 Ill. App. 3d at 399, 672 N.E.2d at 407-08.

We are not persuaded that *Abdullah* and *S.H.* support the State's argument that respondent's conviction constitutes clear and convincing evidence of depravity. In both *Abdullah* and *S.H.*, the trial courts considered "something more" than the mere fact of the respondents' convictions. In *Abdullah*, the court considered (1) the seriousness of the crime of murder; (2) the relationship between the respondent, the victim, and the child; and (3) the brutal and heinous nature of the murder. See *Abdullah*, 85 Ill. 2d at 306-07, 423 N.E.2d at 918. In *S.H.*, the trial court took judicial notice of the record of the guilty-plea proceedings and considered the specific acts the respondent had committed against his own young child. *S.H.*, 284 Ill. App. 3d at 399, 672 N.E.2d at 407-08.

■ In this case, the record contains nothing more than the mere fact of respondent's conviction for predatory criminal sexual assault of a child. The State introduced only respondent's certified conviction, and the trial court did not take judicial notice of anything from respondent's criminal trial, apart from the following facts: (1) respondent denied committing the offense, (2) the victim reported the offense and then later recanted, and (3) there were "issues with regard to whether" the victim was pressured to recant. Thus, this record lacks anything comparable to the circumstances present in *S.H.* and *Abdullah*, which constituted "something more" than the fact of the respondent's conviction.

Moreover, when *Abdullah* and *S.H.* were decided, the Act did not contain any of the presumptions of depravity that now exist. Under section 1(D)(i) as it now exists, convictions of several enumerated crimes create a presumption of depravity, shifting the burden to the respondent to show that he is not depraved. Although aggravated criminal sexual assault (720 ILCS 5/12—14 (West 2002)) is one such crime, predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 2002)) is not. Given the specificity with which the legislature set forth the other enumerated crimes in section 1(D)(i), we cannot assume that the legislature intended to include predatory criminal sexual assault of a child but simply neglected to do so. If the legislature had intended to include that crime, it would have done so. Accordingly, we conclude that the burden was squarely on the State to provide evidence of respondent's depravity beyond the mere fact of his conviction for predatory criminal sexual assault of a child. Because the

State failed to do so, we conclude that the trial court's finding of depravity was against the manifest weight of the evidence.

B. A Parent's Incarceration Under Section 1 (D)(R) of the Act

Respondent also argues that the trial court's unfitness finding based on section 1(D)(r) of the Act was against the manifest weight of the evidence. Specifically, he contends that the State did not, and could not, prove an essential element of section 1(D)(r)—namely, that prior to respondent's incarceration, he had little or no contact with Donald or provided little or no support for Donald—because prior to his incarceration, Donald had not yet been born. We agree.

■ Section 1(D)(r) of the Act provides, in pertinent part, as follows:

"The grounds of unfitness are any *** of the following ***:

\* \* \*

(r)[(1)] The child is in the temporary custody or guardianship of [DCFS], [(2)] the parent is incarcerated as a result of criminal conviction at the time the petition or motion for termination of parental rights is filed, [(3)] prior to incarceration the parent had little or no contact with the child or provided little or no support for the child, and [(4)] the parent's incarceration will prevent the parent from discharging his or her parental responsibilities for the child for a period in excess of [two] years after the filing of the petition or motion for termination of parental rights." 750 ILCS 50/ 1(D)(r) (West 2002).

Initially, we note that in this case, the trial court acknowledged that evidence did not exist on the third element of section 1(D)(r) (that respondent had little or no contact with Donald or provided little or no support for Donald prior to respondent's incarceration) because Donald was not born prior to respondent's incarceration. The court nevertheless found that the State had proved by clear and convincing evidence that respondent was unfit based on this ground.

Whether the Act requires evidence of each subpart of section 1(D)(r) is a question of statutory interpretation, which we review *de novo*. See *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36, 820 N.E.2d 386, 389-90 (2004) ("How a statute is interpreted is not a matter left to the trial court's discretion. It presents a question of law ***"). In *People v. Jones*, 214 Ill. 2d 187, 193, 824 N.E.2d 239, 242 (2005), our supreme court recently discussed statutory interpretation, as follows:

"The primary objective of statutory interpretation is to determine and give effect to the legislature's intent. [Citation.] This inquiry properly begins by examining the language of the statute at issue. [Citation.] The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous. [Cita-

tion.] Where the legislature's intent is not clear from the statute's plain language, the court may examine the legislative history."

Our supreme court has also held that "[l]egislative intent can be ascertained from a consideration of the entire [a]ct, its nature, its object[,] and the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1302 (1990). In addition, courts must not construe words and phrases in isolation and, instead, should construe them in light of other relevant portions of the statute so that—if possible—no term is rendered superfluous or meaningless. *Girard v. White*, 356 Ill. App. 3d 11, 17, 826 N.E.2d 517, 523 (2005).

This case presents a two-part question of interpretation of section 1(D)(r) of the Act. First, whether the State must prove each element of that section, and second, whether the element regarding the respondent's relationship to his child prior to incarceration can ever be satisfied when the respondent is incarcerated prior to the child's birth.

The elements set forth in section 1(D)(r) are listed in the conjunctive, with the word "and" linking the third and fourth elements set forth. Use of the conjunctive "and" between two or more statutory elements ordinarily indicates that the legislature intended that all of the elements must be satisfied in order to comply with the statute. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 87, 773 N.E.2d 641, 645 (2002). Accordingly, we conclude that all of the elements contained in section 1(D)(r) of the Act must be present to establish a ground for unfitness based on that section.

Our interpretation of section 1(D)(r) is consistent with the legislative debates on House Bill 165 (which added section 1(D)(r) to the Act). In particular, when questioned about the effect subsection (r) would have on an incarcerated parent, Representative Dart, a cosponsor of the bill, explained the proposed section as follows:

> "[Section 1(D)(r)] talks about grounds for unfitness[; it] says the child is in the temporary custody or guardianship of DCFS, the parent is incarcerated as a result of criminal conviction at the time of the petition or motion for termination [of] parental rights is filed. Prior to incarceration the parent had little or no contact with the child or provided little or no support for the child. So *those things all have to be done* before anything's impacted." (Emphasis added.) 90th Gen. Assem., House Proceedings, May 22, 1997, at 14 (statements of Representative Dart).

We next consider whether, as a matter of law, the third element of section 1(D)(r) can be satisfied when the respondent is incarcerated prior to the child's birth. In other words, can it be proved that the

parent had little or no contact or provided little or no support for the child prior to incarceration when the child did not exist prior to the respondent's incarceration?

■ In our view, the plain language of subsection (r) presupposes that the child existed before the respondent parent's incarceration began. In addition, the legislative debates show that the legislature did not add section 1(D)(r) to the Act to expedite termination of parental rights in all cases in which the respondent parent was incarcerated. Specifically, when asked "so this is saying that if an individual is incarcerated that their children can be taken away?," Representative Dart replied as follows:

> "No, that's not what the [b]ill says. What the [b]ill is, is in context what that says, is if an individual showed no interest in the child before any conviction occurs, then that individual can not use the fact that now they are in jail to try to get a *habeas corpus* petition out basing it on the child. Before the conviction there is no interest shown in the child. That's what that is getting at now and that's the whole theme of this [b]ill. This is going after the parents who don't care about their kids ***." 90th Gen. Assem., House Proceedings, May 22, 1997, at 12 (statements of Representative Dart).

Thus, the legislature sought to expedite proceedings when, in addition to the other three elements of subsection (r), the respondent had little or no contact with or provided little or no support for the child before incarceration. If the child was not born until after the respondent's incarceration began, the third element of subsection (r) simply cannot apply or be proved.

Accordingly, we conclude that in this case, the trial court's unfitness finding based on section 1(D)(r) of the Act was against the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

APPLETON, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully but strongly dissent. I would affirm the trial court. In asserting that respondent's "mere" predatory-criminal-sexual-assault conviction did not create a presumption of depravity, the majority ignores the clear intent of the legislature and the Illinois courts' interpretation of depravity.

As the majority correctly points out, under section 1(D)(i) of the

Act, a parent is presumed to be depraved if he or she committed aggravated criminal sexual assault in violation of section 12—14(b)(1) of the Code. However, under the Code, section 12—14(b)(1) no longer exists. To correctly interpret the statute in question and determine what kind of sexual-assault offenses create a presumption of depravity, this court must examine the history and the intent of the legislature behind the statute.

The statute for aggravated criminal sexual assault formerly included two crimes, (1) our now predatory criminal sexual assault and (2) our now aggravated criminal sexual assault. See 720 ILCS 5/12—14(b) (West 1994). Former section 12—14(b)(1) of the Code, as late as 1994, stated as follows:

> "(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12—14(b)(1) (West 1994).

This language now defines predatory criminal sexual assault (720 ILCS 5/12—14.1(a)(1) (West 2002)). Section 12—14(b)(2) (720 ILCS 5/12—14(b)(2) (West 1994)) was actually what is now our aggravated criminal sexual assault (720 ILCS 5/12—14(b) (West 2002)), that is:

> "(2) the accused was under 17 years of age and (i) commits an act of sexual penetration with a victim who was under 9 years of age when the act was committed; or (ii) commits an act of sexual penetration with a victim who was at least 9 years of age but under 13 years of age when the act was committed and the accused used force or threat of force to commit the act." 720 ILCS 5/12—14(b)(2) (West 1994).

The above statutes clearly establish that the Act's presumption of depravity in section 12—14(b)(1) was based on the 1994 version of the Code and referred to the offense of predatory criminal sexual assault, which was formerly called aggravated criminal sexual assault. Section 12—14(b)(1) no longer exists in the Code, only subsection (b) exists, which is now aggravated criminal sexual assault, the former section 12—14(b)(2). Clearly, the legislature intended that respondent's predatory-criminal-sexual-assault conviction create a presumption of depravity under the Act. Moreover, it is difficult to believe that the legislature intended to draw a distinction between these two Class X felonies, particularly where predatory criminal sexual assault carries, in certain circumstances, a *mandatory* 50-year sentence. 720 ILCS 5/12—14.1(b) (West 2002).

Further, respondent is depraved regardless of whether the presumption of depravity applies. As the majority stated, Illinois courts define depravity as " ' "an inherent deficiency of moral sense and

rectitude." ' " 357 Ill. App. 3d at 939, quoting *Abdullah*, 85 Ill. 2d at 305, 423 N.E.2d at 917, quoting *Stalder*, 412 Ill. at 498, 107 N.E.2d at 701. In the instant case, respondent was convicted of a Class X sexual assault of a child and is serving a 20-year sentence. The trial judge took judicial notice of the evidence presented in that case, as the following discussion demonstrates:

"THE COURT: I heard the case.

MR. McINTIRE [(respondent's attorney)]: Right.

THE COURT: And I know what the testimony was. But for record purposes what does it matter what [respondent] testified to?

MR. McINTIRE: Judge, I'm merely trying to establish as best I can that—notwithstanding his conviction, that [respondent] is not depraved or not necessarily depraved based on—

THE COURT: Well, I guess the problem I've got is the conviction is for predatory criminal sexual assault, and the offense for which the rebuttable presumption of depravity exists is aggravated criminal sexual assault. So I don't think they've got it anyway.

MR. McINTIRE: I understand, Judge. I'm merely trying to establish for the record, and perhaps I can do that by asking the [c]ourt to judicially notice the previous proceedings since—frankly, since we're fortunate enough to be in front of the [j]udge that heard that.

THE COURT: I'll take judicial notice that [respondent] denied committing the offense; that it was a fairly unique fact situation in that the minor reported the allegations, subsequently recanted the allegations, and that there were issues with regard to whether there was pressure applied to the minor to get [her] to recant; but the testimony of [respondent] was that it did not happen."

Further, in *S.H.*, 284 Ill. App. 3d at 399, 672 N.E.2d at 407-08, sex with the defendant's own child was enough to establish depravity. Why should not sex with someone else's child be enough? Curiously, the legislature has long recognized that incest is not as heinous as the act with a neighbor, as criminal sexual assault is probationable only if the defendant is a family member of the victim. See 730 ILCS 5/5—5—3(e) (West 2002). Clearly, the trial court noted the "unique factual situation" that led to respondent's conviction and later concluded that respondent was depraved due to the nature of his criminal conviction. Such a finding is not erroneous, and this court should therefore affirm on that basis.

Finally, we can affirm on any ground apparent from the record. *In re K.B.*, 314 Ill. App. 3d 739, 751, 732 N.E.2d 1198, 1208 (2000). Despite the trial court's comment to the contrary, the record establishes that respondent failed to maintain a reasonable degree of interest (750 ILCS 50/1(D)(b) (West 2002)), a ground raised by the

946

State in its petition, because respondent made no efforts since the birth of the minor.