NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240731-U

NO. 4-24-0731

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Adoption of J.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (John B. and Katie G., | ) | Lee County |
| Petitioners-Appellees, | ) | No. 22AD6 |
| v. | ) | |
| Richard G., | ) | Honorable |
| Respondent-Appellant). | ) | Jacquelyn Dawn Ackert, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, finding no arguable issue could be raised on appeal.

¶ 2  Petitioners, John B. and Katie G., the stepfather and biological mother, respectively, of J.G., filed a petition to adopt J.G. and to terminate the parental rights of respondent, Richard G., who is J.G.'s biological father. Petitioners alleged that respondent's consent to the adoption was unnecessary because he was unfit on various grounds. The trial court found respondent to be unfit on the grounds of depravity and substantial neglect. The court subsequently determined that termination of respondent's parental rights was in J.G.'s best interest.

¶ 3    Respondent appealed, and counsel was appointed to represent him. Counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), alleging that there is no arguably meritorious issue to be raised on appeal. We grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5    On May 5, 2022, petitioners filed a petition to adopt J.G. and to terminate respondent's parental rights. The petition alleged that respondent's consent to the adoption was unnecessary because he was unfit in several respects, including: (1) failing to maintain a reasonable degree of interest, concern, or responsibility for the child's welfare; (2) evidencing an intent to forgo his parental rights by his failure to plan for the future of the child for a period in excess of 12 months; (3) evidencing an intent to forgo his parental rights by failing to communicate with the child; (4) evidencing an intent to forgo his parental rights by failing to visit the child; (5) failing to provide a reasonable amount of financial support for the child; (6) abandoning the child; (7) deserting the child for more than three months; (8) substantially neglecting the child; (9) being depraved, in that he had at least three felony convictions, one of which occurred within five years of the filing of the petition; and (10) being habitually addicted to drugs other than those prescribed by a physician.

¶ 6    Respondent, *pro se*, filed a response, objecting to the adoption and to the petition to terminate his parental rights, and the trial court subsequently appointed counsel to represent him.

¶ 7    On September 26, 2023, the trial court held a hearing on the unfitness portion of the petition. Katie G. testified that she and John B. had been married for approximately two years and had been in a dating relationship for approximately six years before their marriage. (Katie's

last name had changed by the time of the unfitness hearing, but we refer to her as "Katie G." throughout this order for purposes of consistency.) Katie acknowledged that a visitation order had been in place since 2012, which granted respondent parenting time with J.G. on Wednesday evenings and alternating weekends. Katie stated that respondent missed visitation or was late more than 20 times over the years. There were also instances where respondent attempted to pick up J.G. for parenting time but Katie would not allow him to due to concerns about his drinking and drug use. In August 2020, Katie told respondent, at J.G.'s request, that J.G. no longer wished to have visits with him. J.G. saw respondent for a few hours in December 2020 for Christmas. She had a few visits with respondent after that but stopped having visits in February or March 2021. Respondent brought presents for J.G.'s birthday and Christmas in November 2021, but J.G. would not come to the door to accept the items.

¶ 8        Katie testified that she recalled respondent being incarcerated three times during J.G.'s life. The first was in 2013, when J.G. was in kindergarten. He was released in 2014, and he was again incarcerated in 2015. When he was released, he slowly resumed having a relationship with J.G. Respondent returned to prison in 2022 for less than one year. Respondent attempted to place collect calls to J.G. each time he was incarcerated. Katie accepted some calls during his first period of incarceration, but she did not accept any calls during his second and third periods of incarceration because she did not want to pay for them. Respondent sent mail to J.G. during his first period of incarceration but not the subsequent ones.

¶ 9        Certified copies of respondent's prior felony convictions were admitted into evidence, and respondent also testified concerning his criminal history. This evidence showed that, in 2005, respondent was convicted of two counts of possession of cocaine and one count of possession of cannabis. In 2014, respondent was convicted of unlawful possession of cannabis

with the intent to deliver and was sentenced to two years and six months' imprisonment. He was released from prison after 10 months. Respondent testified that he was arrested for domestic battery in 2019, and he spent approximately three weeks in jail. In 2020, respondent was arrested for possession of methamphetamine and spent a few weeks in jail. He was subsequently convicted of that offense and sentenced to 18 months' probation. His probation was subsequently revoked after he tested positive for methamphetamine, and he was resentenced to two years' imprisonment in 2022. Respondent testified that, in 2021, he was arrested for domestic battery and spent approximately three weeks in jail. He was also arrested for disorderly conduct and driving under the influence (DUI) in 2021. Petitioners' evidence showed respondent was convicted of domestic battery and disorderly conduct, but he received a disposition of court supervision on the DUI charge.

¶ 10        Respondent testified there were times over the years when he took J.G. to events or parties where individuals were drinking alcohol. Respondent stated that there were several occasions during which he drank alcohol and became intoxicated when J.G. was in his care.

¶ 11        John B. testified that he had been living with Katie G. since 2015. Since that time, John had picked up J.G. from her visits with respondent on several occasions, and respondent appeared to be intoxicated on many of those occasions. John indicated that, between 2015 and 2021, respondent failed to pick up J.G. for scheduled visits on approximately six occasions. Respondent also missed visits on several other occasions when he was incarcerated. Starting in approximately 2018, J.G. started refusing to go to visits with respondent because she was uncomfortable with his drinking and drug use. John testified that he did not ask J.G. what drug respondent was using, but he assumed it was cannabis.

- 4 -

¶ 12    At the close of petitioners' case in chief, respondent's counsel moved for a directed finding as to all grounds of unfitness alleged in the petition except depravity. The trial court granted the motion for a directed finding as to the first seven grounds of unfitness alleged in the petition but did not grant the motion as to the grounds of substantial neglect and habitual addiction to drugs.

¶ 13    Respondent testified on his own behalf. He acknowledged that his past incarcerations had impacted his relationship with J.G. When asked to describe his criminal history, respondent stated: "It's bad, and it's all due to, you know, drugs and I've—I want to say I learned my lesson. I don't know. It looks—looks really bad, I know, but I am a good father ***." Respondent said he was "clean," though he occasionally used cannabis and alcohol; he had not been arrested since his last release from prison; and his parole term was ending later that month. He stated he had been "trying to get back in [J.G.'s] life." Respondent indicated he had "changed [his] friends" and his "outlook of life," though he admitted he still spent time with some of his lifelong friends. Respondent stated he had never used illegal drugs in J.G.'s presence. He stated he had drunk alcohol while caring for her, but he never became intoxicated to the point that he did not know what was going on or could not "handle" her.

¶ 14    On November 27, 2023, the trial court entered an order finding petitioners had established by clear and convincing evidence that respondent was depraved. The court stated: "Depravity may be rebutted; however, there was insufficient evidence presented at trial to rebut this presumption." The court also found that respondent was unfit in that he substantially neglected J.G., noting his prior substance abuse disorder, criminal history, prior incarceration, and history of failing to appear for visits. The court found petitioners failed to establish by clear and convincing evidence that respondent was habitually addicted to drugs.

¶ 15     On April 3, 2024, the trial court held a best interest hearing. J.G., then 15 years old, testified that she lived with petitioners and her three siblings. J.G. testified that she had lived with John B. for the past five years. J.G. indicated she had been calling John "dad" for approximately one year, and it was her choice to begin calling him that. J.G. stated: "He's just been more of a father figure and dad in my life, and I take him as a dad." J.G. stated that she asked John to adopt her approximately two years earlier because he had always taken care of her and "been there as a dad" for her, and she still wanted him to adopt her. She stated that her mother and John were the ones who took care of her, providing her with housing, clothing, and medical care. J.G. testified that she stopped visiting respondent approximately four years earlier because she was not comfortable visiting him. She stated: "He'd always be drinking or partying with his friends, and I didn't like being around that environment."

¶ 16     The guardian *ad litem* (GAL) testified that she recommended that respondent's parental rights be terminated and that J.G. be adopted by petitioners. The GAL testified that she believed J.G.'s relationship with respondent was damaged by the fact that respondent had not had parenting time with J.G. for approximately four years, but she believed the relationship had already been damaged prior to that. She noted that J.G. reported that she did not feel comfortable or safe when she visited respondent, and respondent continued to drink alcohol when she asked him not to. The GAL's report was admitted into evidence.

¶ 17     The trial court found petitioners had established by a preponderance of the evidence that termination of respondent's parental rights was in J.G.'s best interest. The court indicated it had considered the evidence presented, the parties' arguments, and the GAL's report. The court stated that J.G. had found stability with petitioners, and she considered them to be her

parents. The court noted that J.G. had been very clear that she wished to be adopted by John B. The court stated:

> "[T]his process started long ago when this child was very small, and it was a result of [respondent's] own actions. His criminal behavior; his being in and out of jail or prison; the way he handled his parenting time with the minor; the fact that he was drinking and partying while she was present, instead of enjoying his time with her; he's the one that initiated this action many, many years ago by his conduct."

¶ 18　　　　The trial court entered an order terminating respondent's parental rights. This appeal followed.

¶ 19　　　　　　　　　　　　　II. ANALYSIS

¶ 20　　　　On appeal, appointed appellate counsel has moved to withdraw, indicating that he has reviewed the record and has concluded respondent's appeal is without arguable merit. Along with his motion to withdraw, counsel filed a certification indicating he had mailed a copy of his motion to withdraw and brief in support to respondent. Respondent has not filed a response. Counsel states he considered arguing that the trial court's unfitness and best interest determinations were against the manifest weight of the evidence. However, counsel has determined that no meritorious argument can be made as to either of these issues.

¶ 21　　　　The procedure for appellate counsel to withdraw set forth in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under this procedure, counsel's motion to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." (Internal quotation marks omitted.) *Id.* Counsel must sketch the arguments in support of such issues and

explain why counsel believes the arguments are frivolous. *Id.* In cases involving the termination of parental rights, counsel should review both the finding of unfitness and the best interest determination. *Id.*

¶ 22                                    A. Unfitness

¶ 23          Counsel indicates he considered arguing the trial court's determination that respondent was unfit was against the manifest weight of the evidence. However, counsel determined he was unable to do so because respondent was presumed unfit on the basis of depravity due to his prior felony convictions, and he failed to present any evidence he had been rehabilitated.

¶ 24          Generally, both parents must consent to a child's adoption. *In re Adoption of L.T.M.*, 214 Ill. 2d 60, 67 (2005). However, when the trial court finds that a parent is unfit pursuant to one of the grounds enumerated in section 1(D)(i) of the Adoption Act (Act) (750 ILCS 50/1(D)(i) (West 2022)), that parent's consent is not required. 750 ILCS 50/8(a)(1) (West 2022); *L.T.M.*, 214 Ill. 2d at 67. It is the petitioner's burden to prove by clear and convincing evidence that the respondent is unfit. *L.T.M.*, 214 Ill. 2d at 67-68. If the court finds a parent to be unfit, the court then considers whether termination of the respondent's parental rights is in the child's best interest. *In re Adoption of Syck*, 138 Ill. 2d 255, 277 (1990).

¶ 25          One of the grounds for parental unfitness set forth in the Act is depravity. 750 ILCS 50/1(D)(i) (West 2022)). While the Act does not define "depravity," our supreme court has held that "depravity is an inherent deficiency of moral sense and rectitude." (Internal quotation marks omitted.) *In re Abdullah*, 85 Ill. 2d 300, 305 (1981).

> "Depravity must be shown to exist at the time of the petition to terminate parental
> rights, and the acts constituting depravity *** must be of sufficient duration and

of sufficient repetition to establish a deficiency in moral sense and either an inability or an unwillingness to conform to accepted morality." (Internal quotation marks omitted.) *In re A.M.*, 358 Ill. App. 3d 247, 253 (2005). It is the petitioner's burden to prove by clear and convincing evidence that the respondent is depraved. *In re L.J.S.*, 2018 IL App (3d) 180218, ¶ 18.

¶ 26     Having several felony convictions may be sufficient to establish depravity. *In re J.A.*, 316 Ill. App. 3d 553, 562 (2000). While the legislature has not stated what number and magnitude of offenses are sufficient for a finding of depravity, it has specified the number and magnitude of convictions that create a rebuttable presumption of depravity. *Id.* Relevant to this appeal, section 1(D)(i) of the Act (750 ILCS 50/1(D)(i) (West 2022)) provides:

> "There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights."

Because the presumption of depravity set forth in the statute is rebuttable, "a parent is still able to present evidence showing that, despite his convictions, he is not depraved." *J.A.*, 316 Ill. App. 3d at 562. "Rehabilitation can only be shown by a parent who, upon leaving prison, maintains a lifestyle suitable for parenting children safely." *In re J.V.*, 2018 IL App (1st) 171766, ¶ 183.

¶ 27     "A rebuttable presumption creates a *prima facie* case as to the particular issue in question and thus has the practical effect of requiring the party against whom it operates to come forward with evidence to meet the presumption." (Internal quotation marks omitted.) *J.A.*, 316 Ill. App. 3d at 562. Once evidence opposing the presumption is introduced, "the presumption

ceases to operate, and the issue is determined on the basis of the evidence adduced at trial as if no presumption had ever existed." *Id.* "The only effect of the rebuttable presumption is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail." *Id.* at 563.

¶ 28        "[A] trial court's finding that a parent is unfit under section 1(D) of the [Act] will not be reversed on appeal unless that finding is against the manifest weight of the evidence." *In re N.G.*, 2018 IL 121939, ¶ 29. A court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 29        Here, petitioners presented evidence that respondent had previously been convicted of five felony convictions, one of which took place within five years of the filing of the petition, which created a rebuttable presumption of depravity. See 750 ILCS 50/1(D)(i) (West 2022). In an attempt to rebut this presumption, respondent presented his own testimony that he had not been arrested since he was released from prison in October 2022; he was "clean," other than occasionally using cannabis and alcohol; he had "changed [his] friends," though not all of them; he would be released from parole soon; and he was trying to get back into J.G.'s life.

¶ 30        Even assuming for the sake of argument respondent's testimony was sufficient to rebut the presumption of depravity created by his criminal history, the trial court's finding that petitioners established by clear and convincing evidence that respondent was depraved was not against the manifest weight of the evidence. The petitioners' evidence showed that respondent had five felony convictions for drug-related offenses, the oldest of which was entered in 2005. His most recent felony conviction, which was for possession of methamphetamine, was entered in 2021, and respondent initially received a sentence of probation. His probation was revoked after he tested positive for methamphetamine. He was resentenced to two years' imprisonment in

January 2022, and he was released from custody in October 2022. Respondent testified that, in 2021, he was also arrested for the misdemeanor offenses of domestic battery, disorderly conduct, and DUI. The evidence showed that respondent's criminal issues and terms of incarceration in the county jail and in prison negatively affected his relationship with J.G., as he was unable to support her during those times. Evidence was also presented that respondent's use of alcohol had negatively affected his relationship with J.G. Respondent admitted to regularly drinking alcohol when J.G. was in his care, and petitioners' evidence indicated this made J.G. uncomfortable.

¶ 31 The petitioners' evidence, taken as a whole, showed that respondent had a long history of drug-related criminal offenses and alcohol use that negatively impacted his relationship with his daughter. Respondent appeared to be unwilling or unable to conform his conduct to an acceptable level of morality, as he continued to use substances, including methamphetamine, when he was on probation and continued to commit criminal offenses during his sentence of probation. While respondent testified that he was "clean" at the time of the unfitness hearing and had not been arrested since he was released from prison approximately 11 months prior to the hearing, this period of abstention from unlawful behavior was relatively brief. Moreover, respondent offered only his own testimony as evidence that he was not depraved, and the trial court was not required to accept it as credible.

¶ 32 Under these circumstances, we agree with counsel that there is no meritorious argument to be made that the trial court's determination that respondent was unfit on the ground of depravity was against the manifest weight of the evidence, as the opposite conclusion is not clearly apparent. See *N.G.*, 2018 IL 121939, ¶ 29. While counsel's brief should have ideally addressed substantial neglect as a ground of unfitness as well (see *In re Zy. D.*, 2021 IL App (2d)

200629, ¶ 7; *In re Austin C.*, 353 Ill. App. 3d 942, 947 (2004)), only one ground for unfitness need be proven to establish unfitness. See *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005).

¶ 33                                B. Best Interest

¶ 34        Counsel also indicates that he considered arguing that the trial court's determination that termination of respondent's parental rights was in J.G.'s best interest was against the manifest weight of the evidence but concluded that such an argument would be without merit. We agree.

¶ 35        After a parent is determined to be unfit, the trial court "proceed[s] to consider the child's best interests and whether those interests would be served by the child's adoption by the petitioners, requiring termination of the natural parent's parental rights." *Syck*, 138 Ill. 2d at 277. At this point, the focus shifts from the parent to the child, and "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *Id.*

¶ 36        In determining whether termination of parental rights is in a minor's best interest, the trial court must consider the following factors within the context of the child's age and developmental needs:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least[-]disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's

- 12 -

need for permanence, including the need for stability and continuity of
relationships with parent figures and siblings; (8) the uniqueness of every family
and child; (9) the risks related to substitute care; and (10) the preferences of the
person available to care for the child." (Internal quotation marks omitted.) *In re
Dal. D.*, 2017 IL App (4th) 160893, ¶ 52.

See also 705 ILCS 405/1-3(4.05) (West 2022).

¶ 37   "We will not disturb a court's finding that termination is in the children's best
interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d
953, 961 (2005). "A trial court's decision is against the manifest weight of the evidence only if
the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based
on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 38   Here, 15-year-old J.G. testified at length that she wished to be adopted by her
stepfather, John B. She stated she had lived with John for five years and had started calling him
"dad" one year prior to the hearing. She testified she had asked John to adopt her two years
before the hearing because he had "been there as a dad" for her. She stated that her mother and
John were the ones who took care of her, providing her with housing, clothing, and medical care.
She testified she stopped visiting respondent approximately four years prior to the best interest
hearing. She stated respondent was always "drinking or partying with his friends," and she was
not comfortable being in that environment. The GAL's testimony was consistent with J.G.'s, and
the GAL recommended that respondent's parental rights be terminated so that J.G. could be
adopted by petitioners. Respondent presented no evidence.

¶ 39 Based on the foregoing evidence, we agree with counsel's assessment that an argument that the trial court's best interest determination was against the manifest weight of the evidence would be without arguable merit.

¶ 40                                    III. CONCLUSION

¶ 41 For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 42 Affirmed.